# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

**Jeremy A. Tigan**
302 351 9106
jtigan@morrisnichols.com

July 23, 2021

Honorable Jennifer L. Hall
United States District Court
  For the District of Delaware
844 North King Street
Wilmington, DE 19801-3555

Re:   *Stryker Corporation et al. v. MicroVention, Inc.*, Civ. No. 21-36 (CFC) (JLH)

Dear Judge Hall:

Pursuant to the Court's July 22, 2021 Oral Order (D.I. 29), Plaintiffs (collectively, "Stryker") respectfully submit this letter regarding the parties' protective order dispute.

Stryker's proposal would permit two designated in-house counsel access to documents marked by Defendant MicroVention, Inc. ("Defendant") as "Confidential—Outside Counsel's Eyes Only." Neither designee is a competitive decision-maker. Each has agreed to be bound by the terms of the protective order, including the patent prosecution bar. One attorney, Merle Elliott, is responsible for managing litigation, including settlement negotiations and outside counsel. The other attorney, Karen Hassevoort, is responsible for managing electronic document databases. Both require access to highly confidential materials to adequately represent Stryker in this case and manage outside counsel effectively.

Defendant opposes Stryker's proposal and has demanded additional, unduly restrictive terms. The parties had productive meet and confers that resolved several issues—but this one remains. Accordingly, Stryker requests that the Court adopt its proposals in Paragraphs 8, 33(b), and 48 of the proposed protective order, attached as Exhibit A.

Defendant's stated position is that Stryker's in-house counsel should not have access to highly confidential documents, despite the express assurance in Stryker's proposal that its designees would not be competitive decision-makers and the numerous safeguards to minimize inadvertent disclosure or misuse of such information. As Senior Intellectual Property Counsel, Ms. Elliott is responsible for managing patent cases for Stryker, including being the primary liaison with outside counsel. As Senior Legal Counsel, E-Discovery, Ms. Hassevoort manages Stryker's electronic document database. To minimize the risk of inadvertent disclosure, Stryker agreed that these designees would be subject to a prosecution bar for up to one year following final disposition of this litigation.

Defendant demands that Stryker's designees further agree not to: (1) "[m]ake decisions or provide substantive input for decision-making regarding issues affecting competition with the disclosing party or other entities (including pricing, product development, commercialization, and/or business acquisitions)"; or (2) "[p]articipate in any identification, selection, or infringement analysis of any additional patents for potential assertion against the disclosing party or the disclosing party's current or future products, whether or not such patents are pending or issued and whether or not such patents are from third parties or already in receiving party's possession." (Ex. B (7/1/21 R. Acharya Email to A. Fry).) Stryker offered a counterproposal that accepted the first provision, with the caveat that Stryker's designees could still "supervise, advise, or otherwise participate in the legal decision-making related to Stryker's intellectual property portfolio and its enforcement." Stryker deleted the second provision. (Ex. C (7/6/21 A. Fry Email to R. Acharya).) Defendant refused the compromise.

Defendant's proposal is unduly restrictive and without support. Courts in this District recognize that "[a] party has a strong interest in choosing counsel to represent it, and that counsel generally has a right to access all materials in the case including those produced confidentially during discovery." *Evertz Microsystems Ltd. v. Lawo Inc.*, No. 19-302-MN-JLH, 2019 WL 5864173, at *2 (D. Del. Nov. 8, 2019) (citing *British Telecomms. PLC v. IAC/InterActiveCorp.*, 330 F.R.D. 387, 390 (D. Del. 2019)). "[C]ounsel's access to confidential information may be denied or limited when there is a high risk of inadvertent disclosure." *Id.* (citing *British Telecomms.*, 330 F.R.D. at 390). The "critical question" for this inquiry is whether counsel "is in a position that creates a high risk of inadvertent disclosure," not "whether counsel is in house or retained." *Id.* (citations omitted). In assessing the risk of inadvertent disclosure, courts consider whether counsel is involved in "competitive decisionmaking," which the Federal Circuit has defined as "counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984). As the "party seeking to impose a specific restriction on opposing counsel's access to confidential information," MicroVention "bears the burden to demonstrate good cause for the proposed restriction." *Evertz*, 2019 WL 5864173, at *3 (citing *In re Deutsche Bank Trust Co.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010)).

Defendant cannot show good cause for its additional restrictions. Ms. Elliott and Ms. Hassevoort are not competitive decision-makers. Neither "make[s] pricing or product design decisions" nor has "any responsibilities or involvement in product design or development." *Id.* (citation and quotation marks omitted). Their roles are not intertwined with the roles of business management. Because Ms. Elliott's role relates to IP litigation, Stryker requested that Defendant modify its proposal not to limit Stryker's designees' "ability to supervise, advise, or otherwise participate in the legal decision-making related to Stryker's intellectual property portfolio and its enforcement." (Ex. C (7/6/21 A. Fry Email to R. Acharya).) Delaware precedent supports this proposal. *R.R. Donnelley & Sons Co. v. Quark, Inc.*, No. 06-032-JFF, 2007 WL 61885, at *1–2 (D. Del. Jan 4, 2007) (permitting plaintiff's Chief Patent Counsel access to "Attorneys' Eyes Only" information where his role was to "supervise the legal decision-making related to [plaintiff's] intellectual property portfolio and its enforcement"). Indeed, this Court has stated that "all litigation counsel" advise their employer "on the technological aspects of [its] IP enforcement" and "[t]hat is not enough to make an attorney a competitive decisionmaker." *Evertz*, 2019 WL 5864173, at *3.

Moreover, Stryker's designees require access to highly confidential materials to adequately represent Stryker and meaningfully assist its outside counsel in this case. Their "lack of access would impede [Stryker's] ability to litigate through outside counsel." *R.R. Donnelley*, 2007 WL 61885, at *1. For example, Stryker would be prejudiced if Ms. Elliott's role were limited because she is unable to review dispositive motions or briefs relating to discovery disputes, attend key fact or expert depositions—which often involve highly sensitive information—or review and analyze settlement agreements.

Defendant's stated concerns about the potential misuse of sensitive information to assert additional patents are unfounded. ***Stryker's designees agreed to be bound by the terms of the protective order, including the prosecution bar and the terms limiting use of designated information to this litigation.*** Stryker also accepted Defendant's proposal to prohibit either designee from storing any sensitive material on "computer systems accessible to business personnel at Stryker" and to "ensure that any such electronic material is password-protected, or encrypted, or both." (Ex. C (7/6/21 A. Fry Email to R. Acharya).) In view of these safeguards, Stryker's interest in choosing its own counsel outweighs any risk of inadvertent disclosure.

Contrary to its assertion, *British Telecommunications* does not mandate the restrictions Defendant seeks. In that case, the plaintiff represented that its designated in-house counsel would not participate in identifying, selecting, or analyzing the infringement of any additional patents for potential assertion against the defendants. 330 F.R.D. at 393. The Court did not, however, base its decision to permit access solely on that representation, nor did it hold that such a representation was a prerequisite in all situations in which in-house counsel seek access to highly confidential information. Indeed, "[d]etermining if there is a high risk of inadvertent disclosure is a fact-intensive inquiry that must be conducted on a counsel-by-counsel basis." *Evertz*, 2019 WL 5864173, at *2 (citing *U.S. Steel*, 730 F.2d at 1468). Furthermore, the type of access that Stryker seeks is typical in protective orders in this District. (*See, e.g.*, Ex. D, *Barry v. Stryker Corp.*, No. 20-1787-RGA, D.I. 28 at 18 ¶ 7(b) (D. Del. July 7, 2021) (permitting up to three designated Stryker in-house counsel access to "attorneys eyes only" material); Ex. E, *Midwest Energy Emissions Corp. v. Vistra Energy Corp.*, No. 19-1334-RGA-CJB, D.I. 161 at 6 ¶ 10 (D. Del. July 30, 2020) (permitting in-house counsel access to "attorneys' eyes only" material provided they "exercise no competitive decision-making authority on behalf of the client"); Ex. F, *JSDQ Mesh Techs. LLC v. EERO LLC*, No. 20-1050-MN, D.I. 29 at 19 ¶ 8.3(h) (D. Del. Dec. 9, 2020) (permitting one in-house counsel access to "attorneys' eyes only" information).)

Stryker's two designated in-house counsel are not competitive decision-makers and have agreed to numerous protections. Accordingly, Stryker requests that the Court adopt its proposal and reject Defendant's additional, undue restrictions that go beyond this District's precedent.

                Respectfully,

                */s/ Jeremy A. Tigan*

                Jeremy A. Tigan (#5239)

JAT/rs
cc:    Clerk of the Court (by CM/ECF)
        All Counsel of Record (by CM/ECF and email)