IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| STRYKER CORPORATION, STRYKER EUROPEAN OPERATIONS HOLDINGS LLC and STRYKER SALES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>MICROVENTION, INC.,<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 21-036-CFC-JLH<br>)<br>)<br>)<br>)<br>) |

## MICROVENTION, INC.'S ANSWERING LETTER BRIEF REGARDING PROTECTIVE ORDER DISPUTE

*Of Counsel:*
Pillsbury Winthrop Shaw Pittman LLP

Michael E. Zeliger
Ranjini Acharya
2550 Hanover Street
Palo Alto, CA 94304
(650) 233-4500
michael.zeliger@pillsburylaw.com
ranjini.acharya@pillsburylaw.com

Evan Finkel
725 S Figueroa St – 36th Floor
Los Angeles, CA 90017
(213) 488-7307
evan.finkel@pillsburylaw.com

Austin Schnell
401 Congress Avenue, Suite 1700
Austin, TX 78701
(512) 580-9600
austin.schnell@pillsburylaw.com

Dated: July 27, 2021

Francis DiGiovanni (No. 3189)
Thatcher A. Rahmeier (No. 5222)
Faegre Drinker Biddle & Reath LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@faegredrinker.com
thatcher.rahmeier@faegredrinker.com

*Attorneys for Defendant MicroVention, Inc.*

Dear Judge Hall:

Pursuant to the Court's Order (D.I. 29), Defendant MicroVention, Inc. ("MicroVention") respectfully submits this letter in response to Plaintiffs' July 23, 2021 letter (D.I. 32).

Plaintiffs sued MicroVention, alleging that MicroVention's Woven EndoBridge (WEB) Aneurysm Embolization System infringes Plaintiffs' patent. Plaintiffs also claim to offer "neurovascular embolization devices to treat vascular abnormalities," and to market and sell "multiple [FDA]-approved neurovascular embolization devices." D.I. 1 at ¶ 2. Both parties agreed to the entry of a protective order to prevent public disclosure of information that "might result in their suffering competitive harm [and] result in an unfair competitive advantage to their competitors." D.I. 32, Ex. A. at 1–2. The parties agreed that access to material designated "Confidential—Outside Counsel's Eyes Only" (hereafter, "AEO") should essentially be limited to the Court, Outside Counsel and Consultants, and litigation support personnel. *Id.* at ¶ 33. However, Plaintiffs have insisted that two Stryker in-house counsel (Ms. Elliott and Ms. Hassevoort) be allowed to access these very same documents and information.[1] This would vitiate the protections afforded by the AEO designation in the proposed Protective Order.

As an initial matter, neither Ms. Elliott nor Ms. Hassevoort provided a declaration in support of the relief that Plaintiffs seek. Rather, Plaintiffs proffer unsupported attorney argument, asserting that these individuals should have access to MicroVention's most competitively sensitive financial and technical information in order to be "the primary liaison with outside counsel," to "manage[] Stryker's electronic document database," and to "meaningfully assist its outside counsel in this case." D.I. 32 at 1, 3. The Court, however, specifically recognizes that "the risk of inadvertent disclosure cannot be overcome by the mere contention that access to confidential information is necessary for case management." *PhishMe, Inc. v. Wombat Sec. Techs., Inc.,* No. CV 16-403-LPS-CJB, 2017 WL 4138961, at *9 (D. Del. Sept. 18, 2017) (quoting *R.R. Donnelley & Sons Co. v. Quark,* Inc., 06-032, 2007 WL 61885, at *1 (D. Del. Jan. 4, 2007)). Rather, the Court often relies on the sworn statements from in-house counsel who seek access. *See United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 161 (D. Del. 1999) (rejecting a litigant's motion to allow in-house counsel to access confidential information where "the affidavit demonstrate[d] the reality of a situation in which [in-house counsel] ha[d] a very real involvement in competitive decision making.") Here, not only have Plaintiffs not provided *any* evidence, but Plaintiffs have also rejected MicroVention's proposal to have in-house counsel sign an undertaking confirming their non-strategic role.

The Court has stated that in determining whether to allow in-house counsel access to AEO information, "the focus should be on whether 'in-house counsel' lack of access would impede a party's ability to litigate through outside counsel." *PhishMe*, 2017 WL 4138961, at *9. Plaintiffs face no such impediment here. They are represented by competent and capable outside counsel from two firms with extensive intellectual property litigation experience. *See* **Exhibits A** and **B** (each last accessed July 26, 2021). The Court has previously noted that "where parties are represented from the outset by capable outside counsel," there is little trouble in "readily concluding that the outside counsel of a party's choice can adequately represent its interests even if in-house counsel is precluded from viewing confidential information." *PhishMe*, 2017 WL

---

[1] MicroVention does not intend to designate any in-house counsel.

1

4138961, at *9 (quoting *Blackbird Tech LCC v. Service Lighting and Elec. Supplies, Inc.,* 15-53, 2016 WL 2904592, at *5 (D. Del. May 18, 2016) (collecting cases)); *see also R.R. Donnelley*, 2007 WL 61885, at *2 (denying AEO access to a party's employee where request based only on enabling him to manage outside counsel and advise party).[2]

By contrast, the risk of harm to MicroVention is great. **First**, Plaintiffs assert (without evidence) that Ms. Elliott and Ms. Hassevoort are not themselves directly responsible for competitive decision-making or involved in pricing, product design, or development. *See* D.I. 32 at 2. However, Plaintiffs have not argued, much less shown, that these individuals do not advise those within Stryker who have direct responsibility for competitive decision-making. This leaves open the risk that, having learned of MicroVention's most sensitive competitive information, these individuals could inadvertently disclose the same while making their direct reports. This favors denying access. *See PhishMe*, 2017 WL 4138961, at *5 (noting that while in-house counsel "may not be the 'final decisionmaker' as to issues regarding pricing, product design or those otherwise made in light of similar information about a competitor…he plays a very important role in the process that leads to those decisions," and that he would likely be the one to provide such advice because "outside counsel has not traditionally played any role in that process").[3]

**Second**, Plaintiffs have refused to provide additional assurances that, having gained access to MicroVention's AEO information, these two individuals will not thereafter participate in the identification, selection, or infringement analysis of any additional patents for potential assertion against MicroVention or MicroVention's products. *See* D.I. 32, Ex. C at 1–3; *see also* **Exhibit C**. Indeed, Plaintiffs explicitly intend to allow these designees to "supervise, advise, or otherwise participate in the legal decision-making related to Stryker's intellectual property portfolio and its enforcement." *See* D.I. 32 at 2; *id.* Ex. C at 1–3. Such activities directly implicate competitive decision-making, and therefore favor denying Plaintiffs' request. *See PhishMe*, 2017 WL 4138961, at *6 (noting that making determination about whether to pursue patent litigation against competitors or license those competitors "weighs in favor" of a conclusion that in-house counsel undertakes competitive decision-making, which supports denial of access) (citing *Blackbird*, 2016 WL 2904592, at *1 (citing cases)); *Affymetrix, Inc. v. Illumina, Inc.*, 04-901–JJF, 2005 WL 1801683, at *2 (D. Del. July 28, 2005) (finding that in-house counsel could not be included as a party to the protective order, inasmuch as her role was linked to competitive decision-making because she was "part of [defendant's] management team and is involved with settling patent litigation and licensing.").

**Third**, this risk is not alleviated by the presence of the prosecution bar elsewhere in the protective order. Even with such a provision, the Court has recognized, "an attorney might inadvertently utilize a competitor's confidential information in determining how to craft new patent claims that could read on the competitor's products [which] carries with it a particularly significant risk of competitive misuse." *PhishMe*, 2017 WL 4138961 at *7 (denying access even

---

[2] MicroVention is willing to negotiate the disclosure of AEO information on a document-by-document basis if doing so would, for example, facilitate settlement negotiations.

[3] This can be contrasted with *R.R. Donnelly*, in which the Court granted in-house counsel access to AEO information "in significant part because he did *not* report directly to any business person with direct responsibility for competitive decision-making)." *PhishMe*, 2017 WL 4138961, at *5 (underline emphasis added; italicized emphasis in the original) (citing *R.R. Donnelley*, 2007 WL 61885, at *1).

despite a prosecution bar, noting that such a bar "does not entirely eliminate the risk at issue in the patent prosecution space.").

Finally, Plaintiffs rely on other cases that are either inapposite or inapplicable to the relief they seek. *Evertz* concerned access to AEO information by Evertz's long time **_outside counsel_**. *Evertz Microsystems Ltd. v. Lawo Inc.*, No. 19-302-MN-JLH, 2019 WL 5864173. As such, the Court reasoned, there was "no basis on this record to think that the [] attorneys will be advising on and participating in competitive decision-making any more than any other outside counsel." *Id.* at *1. That case did not examine the issue of *in-house* counsel access to AEO information. And Plaintiffs' Exhibits D–F are similarly unavailing; these are *stipulated* protective orders and not orders entered over the objections of one party. *See also* **Exhibit D** (reflecting the parties' joint submission that was subsequently entered in the form shown as Ex. E to Plaintiffs' letter).

In sum, Plaintiffs have not furnished any evidence or authority that supports allowing Stryker's in-house counsel access to AEO information in this case. Further, any putative need does not outweigh the significant risk of harm to MicroVention arising from the inadvertent disclosure or misuse of its most sensitive competitive information. Nevertheless, if this Court accepts Plaintiffs' proposal, then it is entirely reasonable to require Stryker's designees to sign the proposed undertaking shown in **Exhibit E**. Indeed, as MicroVention demonstrated to Plaintiffs during the meet and confer (*see* **Ex. C**), these requested assurances are in line with (or even less restrictive) than those imposed or approved by the Court. *See, e.g., PhishMe*, 2017 WL 4138961, at *8 (despite assurances that Wombat's AEO materials would not be accessible to business personnel at PhishMe, and would be password-protected, or encrypted, the Court denied access because even this "necessarily cannot address the risk that insights from such material may inadvertently seep into the legal advice that [in-house counsel] provides to others"); *Blackbird*, 2016 WL 2904592 (allowing access but requiring Blackbird to execute a covenant not to sue defendants on any after acquired patents in the industry at issue in the case); *British Telecommunications PLC v. IAC/InterActiveCorp,* 330 F.R.D. 387, 393–94 (2019) (allowing access but noting that "British Telecom has agreed [that] if Mr. Hobbs reviews any [AEO information,] he 'will not thereafter participate in any identification, selection or infringement analysis of any additional patents for potential assertion against defendants, whether from third parties or already in [British Telecom's] possession,'" and noting that this "significantly reduce[d] the risk of prejudicial inadvertent disclosure of the [AEO] information"). MicroVention's requests for assurances are neither undue nor beyond this Court's precedent; in fact, they are entirely in keeping with the limited circumstances in which in-house counsel have been granted access to sensitive competitor information in patent cases.

MicroVention therefore respectfully requests that the Court reject Plaintiffs' proposal to allow designated in-house counsel access to AEO information in this litigation. In the alternative, MicroVention respectfully requests that the Court require such designees to additionally sign the undertaking attached hereto as **Ex. E**.

Respectfully,

*/s/ Francis DiGiovanni*

Francis DiGiovanni (No. 3189)

cc: Clerk of the Court (via ECF)
All counsel of record (via ECF)

3